NOT FOR PUBLICATION (Doc. No. 12)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KEVIN PORTER, | : |
| Plaintiff, | : |
| v. | : Civil No. 13-6901 (RBK/AMD) |
| SUNBELT RENTALS, INC., | : **OPINION** |
| Defendant. | : |

**KUGLER**, United States District Judge:

This case involves a dispute concerning the exact amount of money owed to a union employee, Plaintiff Kevin Porter ("Plaintiff"), who performed "custom fabrication" and "night shift" work over a five-year period. Currently before the Court is Defendant Sunbelt Rentals, Inc.'s Motion to Dismiss Plaintiff's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 12.) For the reasons set forth below, the Court will **GRANT** Defendant's motion.

I. FACTUAL AND PROCEDURAL BACKGROUND[1]

From March 2007 through October 2012, Plaintiff was employed as a Mechanic ("Class C") by Defendant Sunbelt Rentals, Inc., ("Defendant"), and paid approximately $21.00 per hour.

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Accordingly, the following facts are taken from Plaintiff's Complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

(Compl. ¶¶ 4, 6-7.)  During Plaintiff's employment with Sunbelt, he was also a member of the International Union of Operating Engineers (the "IUOE").  (Id. ¶ 5.)

Defendant engaged in contractual work with the Federal Government, which entitled Defendant's employees to a $60.00 per hour prevailing wage rate of pay.  (Id. ¶¶ 8-9.)  Although Plaintiff performed two hundred hours of "custom fabrication work" over a five-year period, which entitled him to this $60.00 rate, he instead received only $21.00 per hour, $39.00 less than what he was entitled to receive.  (Id. ¶¶ 11, 21.)  Due to Defendant's failure to pay him his $60.00 per hour rate, Plaintiff alleges that he suffered lost wages in the amount of $7,800.00.  (Id. ¶ 13.)

During his employment with Defendant, Plaintiff also performed approximately 800 hours of "night work."  (Id. ¶¶ 15-17.)  Because Plaintiff worked between the hours of 6:00 PM and 6:00 AM, he was entitled to receive a "night differential" in addition to his regular rate of pay, which was the prevailing wage.  (Id. ¶ 14.)  Although Defendant paid Plaintiff his regular rate of pay for this night work, it failed to pay him the additional night differential, which was fifteen (15) percent more than his regular rate of pay for "third shift night work" pursuant to the Collective Bargaining Agreement between Defendant and the IUOE.  (Id. ¶¶ 15-16.)  Defendant's failure to pay him this night differential of fifteen percent resulted in a wage loss of approximately $7,200.00.  (Id. ¶ 18.)

Finally, because Plaintiff alleges that he was a "prevailing rate employee" under 5 U.S.C. § 5341 et seq., he was entitled to receive a night differential in addition to his regular rate of pay pursuant to 5 U.S.C. § 5343.  (Id. ¶¶ 30-31.)  Pursuant to § 5343, Plaintiff should have been paid ten (10) percent more than his regular rate of pay for the 800 hours of night work that he

performed.  (Id. ¶¶ 17, 33.)  Due to Defendant's failure to pay Plaintiff in accordance with § 5343, Plaintiff lost approximately $4,800.00 in wages.  (Id. ¶ 34.)

On October 9, 2013, Plaintiff filed suit against Defendant in the Superior Court of New Jersey, Burlington County, alleging violations of the New Jersey Prevailing Wage Act, breach of contract, and failure to pay night differential wages in violation of 5 U.S.C. §§ 5342-43.  (Doc. No. 1.)  On November 13, 2013, Defendant removed the action to this Court.  (Id.)  On November 20, 2013, Defendant moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 12.)  Plaintiff's previous counsel failed to timely respond to Defendant's motion.  (Doc. Nos. 15, 18.)

On December 16, 2013, Plaintiff filed a Motion for Relief from Judgment or Order and to Amend Plaintiff's Complaint.  (Doc. No. 15.)  On April 24, 2014, the Court denied Plaintiff's motion since no final judgment or order had been entered, and because Plaintiff failed to attach a copy of his proposed amended complaint to his motion.  (Doc. No. 19.)  The Court ordered, however, that Plaintiff could refile his Motion for Leave to File an Amended Complaint—so long as it included a proposed Amended Complaint—by May 1, 2014.  Because Plaintiff has not refiled his Motion, or made any additional filings in this matter, the Court will now turn to Defendant's pending motion.

## II.  DISCUSSION & ANALYSIS

### A.  Legal Standard on a Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Also, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### B. Claim One – Violation of New Jersey Prevailing Wage Act

In Claim One, Mr. Porter seeks relief under the New Jersey Prevailing Wage Act, N.J.

4

Stat. Ann. §§ 34:11-56.25, (the "PWA").  In order to prevail on a PWA claim an employee must allege either that he or she 1) did public work for a public body, 2) did public work on property or premises owned by a public body, or 3) did public work on property or premises leased or to be leased by a public body.  Id. § 34:11-56.27.  "Public work" includes, inter alia, "custom fabrication work."  Id. § 34.11-56.26(5).  Further, "public body" is defined as "the State of New Jersey, any of its political subdivisions, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions."  Id. § 34.11-56.26(4).

     Plaintiff alleges that because he performed custom fabrication work, he should have been paid prevailing wage.  (Compl. ¶ 10.)  However, in order to state a claim under the PWA, Plaintiff must allege that the custom fabrication work he performed was done in connection with the appropriate "public body."  After reviewing Plaintiff's Complaint, the Court concludes that Plaintiff fails to make these necessary allegations.  Indeed, his Complaint suggests that the custom fabrication work he performed was affiliated with Defendant's contract with the federal government rather than with the State of New Jersey.  (See id. ¶¶ 7-12.)

     Although the Court must construe all factual allegations in the light most favorable to the non-moving party, Phillips, 515 F.3d at 228, the Court cannot infer that the work Plaintiff performed was for a "public body" when his allegations do not support that inference.  Thus, in the absence of an allegation that Plaintiff performed custom fabrication work for a "public body" as defined by the PWA, the Court will grant Defendant's motion to dismiss this claim.[2]

---

[2] The Court notes that Plaintiff fails to identify a source of authority, other than the PWA, for why he is entitled to be paid prevailing wage for custom fabrication work.  (See Compl. ¶ 19-22.)  Although it is likely Plaintiff meant to rely on the CBA, indeed he expressly states in his brief in support of his Motion for Relief from Judgment or Order and to Amend Plaintiff's Complaint that "the terms and conditions" of his employment were governed by the CBA between Defendant and the IUOE, (see Doc. No. 14), he never specifically identifies the CBA as the source of authority in his Complaint.  This failure to plead with specificity creates several issues.  One is that state law claims are typically preempted by §301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), when there is a CBA

**C. Claim Two – Defendant's Violation of the Collective Bargaining Agreement**

In Claim Two, Plaintiff alleges that Defendant breached its contract with the IUOE. (Compl. ¶¶ 25-27.) Per the terms of this contract, Plaintiff was entitled to receive a fifteen percent night differential for all third shift work. (Id. ¶¶ 15-16.) Because Defendant "purposefully and willfully" failed to pay him this contractually agreed-upon rate, it breached its contract with the Plaintiff's union. (Id. ¶ 27.) Although Plaintiff does not specifically refer to this contract as the CBA between his union and his employer, the Court assumes that this is the contract at issue.

Because Plaintiff alleges breach of the CBA, his suit is governed by § 301 of the Labor Management Relations Act ("LMRA"). See 29 U.S.C. § 185; Pilvalis v. Lockheed Martin Corp., No. 12-1354, 2013 WL 1164498, at *7 (D.N.J. Mar. 20, 2013) ("It is well-established that suits alleging a breach of contract based on a collective bargaining agreement are preempted by § 301 of the LMRA, and are thus governed by federal law") (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23

---

in place and resolution of the state law claim is "dependent upon analysis" of the CBA. Broadnax v. LVI Demolition Servs., No. 11- 03084, 2012 WL 1964487, at *3 (D.N.J. May 31, 2012) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)). The PWA provides that the "commissioner shall determine the prevailing wage rate and forthwith shall establish the prevailing wage in the locality in which the public work is to be performed for each craft or trade or classification of all workmen needed to perform public work contracts," N.J. Stat. Ann. § 34:11-56.30, yet the accompanying regulations define "prevailing rage" as the "wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workmen of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done," N.J. Admin. Code § 12:60- 2.1. That being said, the CBA that Defendant attached to its Motion to Dismiss, which this Court may properly consider, see In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (finding that "what is critical is whether the claims in the complaint are "based" on an extrinsic document and not merely whether the extrinsic document was explicitly cited"), makes no reference to any of the pay rates that Plaintiff alleges he is entitled to receive aside from setting forth base wage rates for Mechanics, Drivers, Yard Persons, Painters, and the like, based on their classification (e.g., Mechanic Class A or Class C). (See Def.'s Mot. to Dismiss, Ex A.) Thus, it is not clear that this CBA supports Plaintiff's claim, or that an "analysis" of the CBA would be required to resolve this claim. Another issue is that if § 301 of the LMRA preempts Plaintiff's PWA claim, it is very likely that this claim is time-barred. See discussion infra Part II.C. The Court declines, however, to resolve these thorny issues, particularly on a motion to dismiss. It is enough that Plaintiff failed to state a claim under the PWA, and the Court will grant Defendant's motion to dismiss Claim One on that basis.

(1983)). Under § 301, parties can bring suit for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined . . . [by § 301]." 29 U.S.C. § 185(a).

Defendant argues that Plaintiff's claim is time barred pursuant to the six-month limitations period set forth in § 10(b) of the LMRA, 29 U.S.C. § 160, and thus this claim must be dismissed.

In order to determine which statute of limitations applies to Plaintiff's claim, the Court must first determine whether he alleges a "pure" or "hybrid" § 301 claim. Pilvalis, 2013 WL 1164498, at *8 (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)). A "pure" claim is a "standard § 301 action[] in which a union brings suit against an employer on behalf of an injured employee." Id. This type of action borrows the analogous state law statute of limitations. Id. (citing Serv. Emps. Int'l Union Local 36, AFL-CIO v. City Cleaning Co., Inc., 982 F.2d 89, 95 (3d Cir. 1992)). Comparatively, a "hybrid" claim is where an employee brings suit against both his or her employer and his or her union. Id. (internal citations omitted). "In a hybrid action, the suit against the employer rests on an alleged breach of the collective bargaining agreement, while the claim against the union is based on the union's alleged breach of its duty of fair representation of the employee." Id. These types of claims are subject to the six-month federal limitations period in the LMRA. Id.; DelCostello, 462 U.S. at 151-52.

On the face of the Complaint, Plaintiff does not allege a "pure" claim because his contract claim is solely against his former employer. Pilvalis, 2013 WL 1164498, at *8 (citing Carpenter v. Wawa, No. 09-2768, 2009 WL 4756258, at *4 (E.D. Pa. Dec. 3, 2009) (stating that "[p]ure claims [ ] can only be asserted by unions against employers")). Additionally, Plaintiff has failed to set forth the necessary allegations in order to sustain a "hybrid" cause of action.

7

Although District Courts in the Third Circuit have held that "where employees solely assert claims against their former employers for breach of the collective bargaining agreement without likewise naming the union as a defendant, such claims nonetheless constitute hybrid actions," id. (collecting cases), an employee "must still allege and eventually prove, that the union breached its duty of fair representation" in order to successfully and completely establish a viable hybrid claim, id. (citing Swayne v. Mount Joy Wire Corp., No. 10-3969, 2012 WL 1114379, at *7 (E.D. Pa. Mar. 30, 2012)).  Plaintiff's Complaint contains no such allegations.

Even if Plaintiff had alleged a breach of duty claim against his union, however, his "hybrid" claim would be time-barred.  Plaintiff's employment terminated in October 2012, (Compl. ¶ 4), but he did not file suit against Defendant until October 9, 2013, well outside the six-month limitations period set forth in the LMRA.  Accordingly, the Court will grant Defendant's motion to dismiss this claim.

**D.  Claim Three – Sunbelt's Violation of 5 U.S.C. §§ 5341 et seq.**

In Claim Three, as an alternative to Claim Two, Plaintiff alleges that Defendant violated 5 U.S.C. §§ 5341 et seq. by failing to pay him a night differential for work he performed between the hours of 3:00 PM and 8:00 AM.  (Compl. ¶¶ 30-31.)  Plaintiff alleges that since he worked on prevailing wage jobs during those hours he was entitled to the night differential.  (Id. ¶ 14.) Defendant argues, however, that the night differential outlined in § 5343(f) of the Prevailing Rate System applies solely to federal employees, and thus precludes Plaintiff's claim.  The Court agrees.

Title 5 of the United States Code sets forth the laws relating to the organization of the Government of the United States and to its civilian officers and employees.  Part I addresses "The Agencies."  Part II deals with "Civil Services Functions and Responsibilities."  Finally,

8

Part III deals with "Employees."  Part III, Subpart D, Chapter 53 deals with "Pay Rates and Systems."  Specifically, 5 U.S.C. § 5341 sets forth Congress's policy regarding the rates of pay of prevailing rate employees.  Section 5342(2)(A), defines a "prevailing rate employee" as:

> an individual employed in or under an agency in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement;

Id. § 5342(2)(A).  That section further defines "Agency" as an "Executive agency."[3]  And § 5343 sets forth prevailing rate determinations, wage schedules, and night differentials.  See id. § 5343.  What is not lost on the Court, however, is that this entire portion of the United States Code is devoted to the Federal Government's organization and its employees.  Nowhere does this act provide for a night differential rate for an individual employed by a private employer who happens to have contracted to perform work at the federal government's behest.  Indeed, a review of relevant decisions from Courts of Appeals, illustrates that this statutory scheme was meant to govern federal employees' wages and is simply inapplicable to the case at bar.  See Nat'l Treasury Emp. Union v. Egger, 783 F.2d 1114, 1115 (D.C. Cir. 1986) (explaining that the employees were paid according to the Prevailing Rate system outlined in 5 U.S.C. §§ 5341 et seq. since they were federal employees); Nat'l Fed'n of Fed. Emps. v. Brown, 645 F.2d 1017, 1019 n.1 (D.C. Cir. 1981) (finding that "prevailing rate employees are federal employees"); American Fed'n of Gov't Emps. v. Campbell, 659 F.2d 157, 158 (D.C. Cir. 1980) (finding that the wage surveys outlined in § 5343(a)(3) are "intended to aid the Government in keeping wages for federal employees roughly in line with wages paid to comparably classified employees in the private sector").

---

[3] Although certain entities are excluded from this definition, they are not relevant to the Court's analysis of Plaintiff's third claim.

Although Plaintiff alleges he was being paid prevailing wage for the night work performed, he cites no authority for the proposition that Defendant, a private company, qualifies as an "Executive agency" such that he is entitled to relief.[4] (Compl. ¶ 2.) Thus, the Court will grant Defendant's motion to dismiss this claim.

### E. Leave to Amend and Supplemental Jurisdiction

"When a plaintiff does not seek leave to amend a deficient [complaint] after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless the amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Because Plaintiff's breach of contract claim is time-barred and he cannot state a claim under 5 U.S.C. §§ 5341 et seq., allowing him to amend these claims would be futile. As a result, these claims will be dismissed with prejudice.

As to Claim One, there is a question as to whether this claim is in fact preempted by the LMRA, and thus likely time-barred, or if it is solely a state law cause of action under the PWA. Accordingly, Plaintiff may file a motion to amend his Complaint as to Claim One within 7 days of the date of the Order accompanying this Opinion. Should Plaintiff fail to file said motion, this matter will be closed.

---

[4] The Court is not aware of any case where a private contractor stepped into the shoes of an Executive agency such that its employees were considered federal employees for purposes of 5 U.S.C. §§ 5341 et seq. Cf. Dep't of the Navy, Military Sealift Command v. Fed. Labor Relations Auth., 836 F.2d 1409, 1409 (3d Cir. 1988) (Military Sealift Command, the employer, was a department of the Navy); United States Dep't of the Interior v. Fed. Labor Relations Auth., 26 F.3d 179, 179 (D.C. Cir. 1994) (The Bureau of Reclamation, the employer, was a division of the Department of the Interior); United States Info. Agency, Voice of America v. Fed. Labor Relations Auth., 960 F.2d 165, 166 (D.C. Cir. 1992) (Voice of America, the employer, was a division of the United States Information Agency).

### III.  CONCLUSION

The Court will **GRANT** Defendant's Motion to Dismiss.  Claims Two and Three will be dismissed with prejudice and Claim One will be dismissed without prejudice.  An appropriate Order will issue today.


Dated:  6/9/2014                                                                          s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge